UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMES STAPLES, TABO MACK, DON CHO, and KEITH JAMES,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF SOCIAL AND HEALTH SERVICES, an agency of the State of Washington, ROBIN ARNOLD-WILLIAMS, in her official capacity as Secretary, and in her individual capacity, KATHLEEN HARVEY, in her official capacity as Regional Administrator, and in her individual capacity, PATRICIA LASHWAY, in her official capacity as Regional Administrator, and in her individual capacity, and MICHAEL TYERS, in his official capacity as regional Administrator, and in his individual capacity,<br><br>Defendants. | Case No. C07 5443 RJB<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DISMISSING PLAINTIFF JAMES STAPLES' CLAIMS AND ORDER DENYING DEFENDANTS' MOTION TO STRIKE JAMES STAPLES' DECLARATION. |

This matter comes before the court on Defendants' Motion for Summary Judgment. Dkt. 86. The court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

## I. PROCEDURAL HISTORY

On August 22, 2007, the plaintiffs James Staples, Tabo Mack, Don Cho, and Keith James filed a civil action against the Washington State Department of Social and Health Services ("DSHS") and the Secretary of DSHS, Robin Arnold-Williams, and three Regional Administrators for DSHS, Kathleen

ORDER
Page - 1

Harvey, Patricia Lashway, and Michael Tyers in their official capacities. Dkt. 1. The plaintiffs also brought suit against the defendants in their individual capacities. *Id.*

The plaintiffs alleged in their complaint that the defendants discriminated and retaliated against them because of their race. Dkt. 1. The plaintiffs filed an amended complaint on March 4, 2008. Dkt. 27 The amended complaint alleged that the defendants: (1) violated the plaintiffs' rights under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2, and 42 U.S.C. § 1981 by discriminating against the plaintiffs because of their race; (2) retaliated against the plaintiffs because of their complaints about unfavorable treatment due to racial discrimination, in violation of Title VII and 42 U.S.C. § 1981; and (3) have a general or widespread practice of discrimination based on race and retaliation. Dkt. 27. The plaintiffs plead both disparate impact and disparate treatment under Title VII and 42 U.S.C. § 1981. Dkt. 27. The plaintiffs also alleged that the defendants Ms. Arnold-Williams, Ms. Harvey, Ms. Lashway and Mr. Tyers discriminated against the plaintiffs on the basis of race while acting under the color of state law in violation of 42 U.S.C. § 1983. Dkt. 27.

## II. MOTION FOR SUMMARY JUDGMENT

On January 13, 2009, the defendants filed a motion for summary judgment requesting that the court dismiss plaintiff James Staples from this action. Dkt. 86. The defendants assert that Staples' claims against them should be dismissed because the defendants are not proper defendants. Dkt. 86. First, the defendants argue that individual employees cannot be held liable under Title VII for discrimination or retaliation. Dkt. 86. Second, the defendants assert that states, state agencies or individuals in their official capacity cannot be sued under 42 U.S.C. § 1981 and 42 U.S.C. § 1983. Dkt. 86. Third, the defendants argue that only individual defendants that caused or personally participated in causing the alleged deprivation of protected rights are subject to liability under 42 U.S.C. § 1983. Dkt. 86.

In their motion for summary judgment, the defendants also argue that Staples' claims should be dismissed because (1) Staples failed to identify the specific employment practice or selection criteria, by using statistical evidence, which resulted in a disparate impact on his protected class; and (2) Staples failed to produce specific and substantial evidence to meet a prima facie case for disparate treatment or retaliation, and even if he did, he produced no evidence that DSHS's asserted legitimate non-discriminatory/retaliatory reason was pretextual. Dkt. 86. Finally, the defendants assert that their arguments

in relation to Staples' claims on Title VII also applied to his claims under 42 U.S.C. § 1981 and 42 U.S.C. § 1983, and, thus, these claims should be dismissed. *Id*.

On February 3, 2009, Staples filed a response to the defendants' motion for summary judgment. Dkt. 97. Staples argues that there are genuine issues of material fact on his claims of racial discrimination and retaliation and that he met the prima facie case for discrimination and retaliation. Dkt. 97.

On February 5, 2009, the defendants filed a reply to Staples' response. Dkt. 98. The defendants further argue that the court should grant their motion for summary judgment because (1) Staples' response to their motion was untimely; (2) Staples failed to address or provide any evidence in support of his claim for disparate impact; (3) Staples' response failed to establish a prima facie case of disparate treatment; and (4) Staples failed to provide specific factual evidence that the Letter of Reprimand was a pretext for race-based discrimination or retaliation. Dkt. 98. Further, the defendants move to strike Staples' declaration because the defendants object to the authenticity of Staples' unsigned declaration and its failure to comply with CR 56(e). Dkt. 98. The defendants request that, even if the court were to accept Staples' declaration, the court should strike paragraphs 3, 4, 11, 12, 13, and 19 because the paragraphs are a verbatim recitation of conclusory allegations in Staples' amended complaint. Dkt. 98.

## III. RELEVANT FACTS

The relevant facts herein were supplied by the defendants, unless otherwise noted, because the plaintiff did not contest the defendants' showing of the facts, nor did he provide a separate version of the facts surrounding this action.

The plaintiff James Staples, an African American male, began his employment with DSHS in 1974. Dkt. 97-2 at 2; *see also* Dkt. 86 at 2. On October 5, 2004, Staples was assigned to the Juvenile Rehabilitation Administration as a Juvenile Rehabilitation Coordinator (JRC). Dkt. 88 at 2. As a JRC, Staples' job responsibilities included: serving as one of the two Functional Family Therapy Coordinators (FTTCs); providing Functional Family Therapy (FFT) services; attending weekly FFT consultations; providing Functional Family Parole Services (FFPS); assisting the other Region 4 JRC with facilitating FFPS case staffing; and working with Regional Program Managers to assure the Region's FFPS Adherence Plan was fully implemented. Dkt. 88 at 2.

As of December 2004, Staples started extensive training regarding FFT and FFP. Dkt. 88-2 at 5.

As of January 2005, Staples' FFT performance work started to be reviewed and he was provided performance feedback through FFT, Inc. clinical supervision program. Dkt. 88-2 at 5. This review ended September 10, 2006. Dkt. 88-2.

In March 2005, Staples attended a 2-day FFT follow-up training. Dkt. 88-2 at 5.

In June 2005, Staples attended a 2-day FFT follow-up training and received group and individual instruction on Client Services System (CSS). Dkt. 88-2 at 5. Staples was rated "not well" in adherence and "fairly well" in competence. Dkt. 88-2 at 6. A rating expectation of "well" in adherence and competency is required to maintain FFT certification. Dkt. 88-2 at 6.

In July 2005, Staples again received group and individual instruction on Client Services System (CSS). Dkt. 88-2 at 5.

On July 29, 2005, Staples reviewed and signed the performance goals for a JRA FFT Coordinator (FFTC). Dkt. 88 at 2.

In September 2005, Staples was rated "fairly well" in adherence and competence. Dkt. 88-2 at 6.

In November 2005, Staples attended a 2-day FFT follow-up training. Dkt. 88-2 at 5. On November 2, 2005, Staples met with his supervisor Nancy German to review his FFT caseload required case documentation, GTR's, Informal Improvement Plan, performance goals, and position skills and abilities. Dkt. 88-2 at 7. On November 18, 2005, Staples again met with his supervisor Nancy German to review his FFT caseload required case documentation, Informal Improvement Plan, performance goals, and position skills and abilities. Dkt. 88-2 at 7.

On December 9, 2005, Staples met with his supervisor Nancy German to review his FFT caseload required case documentation, Global Therapist Rating (GTR), Informal Improvement Plan, performance goals, and position skills and abilities. Dkt. 88-2 at 7.

In January 2006, Staples was struggling to meet acceptable FFT therapy standards and was placed on an Informal Improvement Plan. Dkt. 88-2 at 6. On January 6, 2006, Staples met with his supervisor Nancy German to review his FFT caseload required case documentation, GTR's, Informal Improvement Plan, performance goals, and position skills and abilities. Dkt. 88-2 at 7. On January 20, 2006, German wrote a memo to Staples documenting their past supervisory meetings and Staples' concerns about his GTR scores, his being behind in CSS case documentation, and work with McLane, Staples' FFT

Consultant and Supervisor, to develop and implement the information improvement plan. Dkt. 88-2 at 7-8. German's memo also reminded Staples of the requirements necessary to keep his FFTC position. Dkt. 88-2 at 8.

In February 2006, Staples met with German to discuss his progress. Dkt. 88-2 at 8.

In March 2006, Staples attended a 2-day training on engagement and motivation. Dkt. 88-2 at 6. DSHS states that Staples was rated as "fairly well" in adherence and competency. Dkt. 88-2 at 6. Staples needed to improve his clinical skills and struggling to complete CSS case notes, assessments and case closures. Dkt. 88-2 at 6. Again in March 2006, Staples met with German to discuss his progress. Dkt. 88-2 at 8. On March 8, 2006, McClane recommended that he work out a Formal Improvement Plan with Staples. Dkt. 88-2 at 6.

In April 2006, Staples met with German to discuss his progress. Dkt. 88-2 at 8. On April 6, 2006, Harvey received a copy of Staples' formal improvement plan. Dkt. 88-2 at 7. Vollie Berry took over as Staples' FFT Consultant and Supervisor during the Formal Improvement Plan. Dkt. 88-2 at 7.

In May 2006, Staples met with German to discuss his progress. Dkt. 88-2 at 8.

In June 2006, Staples attended a 3-day initial FFT training. Dkt. 88-2 at 6. Staples was rated as "not well" in adherence and competence. Dkt. 88-2 at 6. Again, Staples met with German to discuss his progress. Dkt. 88-2 at 8. On June 20, 2006, Staples was directed to stop taking new FFT cases, complete all outstanding cases by mid-September, 2006, and discontinue his FFT practice. Dkt. 88 at 3. DSHS asserts that this is because Staples was unable to meet basic performance standards for FFT therapists. Dkt. 88 at 3. Jeff Patnode, an FFT Quality Assurance Administrator, called a Formal Performance Plan meeting with Staples, his FFT Consultants (McLane and Berry) and his JRA Supervisor, Nancy German, to discuss the results of the FFT Mid-Point Review. Dkt. 88-2 at 7. The FFT Review team, which involved a focused review of Staples' progress by Patnode, Berry, and Need (Washington State FFT Inc. Consultant), decided that Staples should be decertified by FFT, Inc. by September 10. Dkt. 88-2 at 7. The FFT Review team based their decision on a lack of progress toward meeting goals and the risk for his clients that would accompany practice of FFT outside the scope of design. Dkt. 88-2 at 7.

On July 6, 2006, German wrote a memo to Staples summarizing on-going supervisory meetings. Dkt. 88-2 at 8; Exhibit J. DSHS states that this memo documented conversations with Staples about his

potential FFT decertification and his position, and that this memo also provided notice to Staples that JRA needed to investigate his job performance to determine whether disciplinary action was needed. *Id*. Sometime around this time, Harvey initiated a JRA-based performance investigation after German's memo. Dkt. 88-2 at 8; Exhibit K.

Staples states, in his declaration in support of his response to the defendant's motion for summary judgment, that he attended a staff meeting in August 2006 and told Harvey that he believed he was the victim of employment discrimination because of his race. Dkt. 97-2 at 2. Staples states that the purpose of the meeting was to discuss concerns raised in the DSHS employee survey regarding management and administration issues. Dkt. 97-2 at 2. Staples states that Harvey was present at this meeting. Dkt. 97-2 at 2.

Staples asserts that he raised his concerns about racial discrimination in the workplace at a follow-up staff meeting in September 2006. Dkt. 97-2 at 2. Staples states that Harvey was at this meeting. Dkt. 97-2 at 2. Staples contends that Harvey did not address this issue during the meeting or take any remedial steps after the meeting. Dkt. 97-2 at 2. Also during September 2006, Staples' FFT work performance review, which started January 2005, ended. Dkt. 88-2 at 5. DSHS maintains that Staples received forty-nine weekly model adherence and competency ratings by his FFT consultant/supervisor. Dkt. 88-2 at 5. DSHS states that Staples' average adherence rating was 1.5 compared to an average rating of 4 for his peer group. Dkt. 88-2 at 5. DSHS also states that his average competency rating was 1.5 compared to 3.7 for his peer group. Dkt. 88-2 at 5.

In October 2006, Staples states that he sent a memo to Harvey with complaints about racial discrimination and requested her assistance. Dkt. 97-2 at 2. Staples alleges that Harvey took no remedial steps. Dkt. 97-2 at 2. Staples contends that his supervisor's began complaining about his work performance. Dkt. 97-2 at 2.

On December 14, 2006, JRA issued a report of its investigation of Staples' performance. Dkt. 88-2 at 8; Exhibit K. Around this time, Region 4 management evaluated the proper response to Staples' decertification. Dkt. 88-2 at 8. Harvey and Region 4 management decided that a Letter of Reprimand was the appropriate level of discipline. Dkt. 88-2 at 8.

On February 13, 2007, Staples provided written comments to his 2007 Performance Review including the comment that it was a "hostile work environment." Dkt. 88-2 at 9; Exhibit L. Staples

requested to be removed from German's supervision. *Id*.

On March 2, 2007, Harvey responded to Staples' comments and invited him to speak to her and gave him a list of resources including the EEOC and Washington State Human Rights Council. Dkt. 88-2 at 9; Exhibit M.

On May 1, 2007, Staples was issued a Letter of Reprimand, which was signed by Harvey. Dkt. 88 at 3; Exhibit D. DSHS alleges that this was a result of his inability to achieve and maintain the required Functional Family Therapy (FFT) therapist adherence and competency standards and expected essential functions of the FFTC component of his Region 4 JRC position. Dkt. 88 at 3; Exhibit D. DSHS contends that the LOR did not impact Staples' job title, office location, salary or benefits. Dkt. 88 at 3. Staples remains in his JRC position, although there has been some job description modification because of his FFT decertification. Dkt. 88 at 3. But, DSHS states that his salary remains at Range 49, which is consistent with his peer group for classification. Dkt. 88 at 3. However, Staples alleges that this letter of reprimand was issued without cause or justification and that he was performing his job as well or better than similarly-situated non-complaining and/or white coworkers. Dkt. 97-2 at 2. Also, Staples maintains that the similarly-situated non-complaining and/or white coworkers were not disciplined for the same level or a lower level of job performance. Dkt. 97-2 at 3.

On May 4, 2007, Harvey received an email from Staples' purported attorney, Anne Sulton, indicating that Staples would file a union grievance and employment discrimination claim with the EEOC. Dkt. 88-2 at 9; Exhibit N. On May 21, 2007, Harvey received an email from Sulton indicating that Staples was planning to file an employment discrimination claim with Washington State Human Rights Council. Dkt. 88-2 at 9; Exhibit N. On May 22, 2007, Harvey received an email from the Washington Federation of State Employees (WFSE) that Staples had filed a grievance with the union because he alleged that management did not have just cause to issue the letter of reprimand. Dkt. 88-2 at 9.

On June 18, 2007, Harvey attended a Step 1 grievance meeting with Staples and his union representative. Dkt. 88-2 at 9.

On July 6, 2007, Harvey issued a grievance response upholding the Letter of Reprimand. Dkt. 88-2 at 9.

In August 22 2007, Staples filed this lawsuit. Dkt. 1.

Staples alleges that Harvey appeared before the union grievance committee in September 2007 and testified against Staples. Dkt. 97-2 at 3. Staples's union grievance was dismissed. Dkt. 97-2 at 3. On September 27, 2007, the Step 2 Grievance Resolution Panel heard Staples' grievance. Dkt. 88-2 at 9. The Panel upheld the Letter of Reprimand. Dkt. 88-2 at 9; Exhibit O

On October 16, 2007, DSHS received notice that Staples had filed a claim with the EEOC. Dkt. 88-2 at 10; Exhibit P. However, Staples withdrew the complaint before Harvey completed a response. *Id.*

On April 30, 2008, Staples requested that Harvey remove the letter of reprimand from his file. Dkt. 88-2 at 10; Exhibit Q. However, Harvey denied Staples' request. Dkt. 88-2 at 10; Exhibit R.

## IV. DEFENDANTS' MOTION TO STRIKE THE PLAINTIFF'S RESPONSE TO SUMMARY JUDGMENT MOTION.

The defendants, in their reply to Staples' response to their motion for summary judgment, request that the court grant an order striking Plaintiff's Response to Summary Judgment Motion (Dkt. 97) filed on behalf of plaintiff James Staples because it is untimely. CR 7(d) requires that a nonmoving party file a response to a summary judgment motion "not later than the Monday before the noting date." In this case, that date was February 2, 2009. Staples filed his response on February 3, 2009. Dkt. 97. Staples offered no explanation for his failure to meet the required deadline. Dkt. 97. While the defendants are correct that Staples' response was untimely, it appears that the defendants were not prejudiced because they had time to file a reply by the noting date of February 6, 2009. In the interest of deciding the issues on their merits, the defendants' motion to strike should be denied.

## V. DEFENDANTS' OBJECTION TO THE AUTHENTICITY OF JAMES STAPLES' DECLARATION AND DEFENDANTS' MOTION TO STRIKE PORTIONS OF THIS DECLARATION.

First, the defendants object to the authenticity of James Staples' declaration because they argue that it is unsigned and it fails to comply with CR 56(e). Federal Rule of Civil Procedure 56(e)(1) provides that "a supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Verification requirements for an affidavit are satisfied so long as the unsworn declaration contains the phrase "under penalty of perjury" and states that the document is true. *Kersting v. U.S.*, 865 F.Supp. 669 (D.Hawai'i 1994); *see also* 28 U.S.C.A. § 1746. Declarations made under penalty of perjury which are submitted in

lieu of affidavits are subject to the same requirements as affidavits submitted to support and oppose summary judgment. *Capital Cities/ABC, Inc. v. Ratcliff,* 953 F.Supp.1228 (D.Kan. 1997), affirmed 141 F.3d 1405, certiorari denied 525 U.S. 873. Here, Staples' declaration only states "James Staples, being first duly sworn under oath, deposes and says." Dkt. 97-2. Although the signature on Staples' declaration is questionable and the declaration does not meet the requirements for a declaration opposing summary judgment, the court will accept the declaration for the purpose of deciding the defendants' motion for summary judgment on the merits.

Second, the defendants request that, if the court considers Staples' declaration sufficient, the court strike paragraphs 3, 4, 11, 12, 13 and 19 because "the statements contained herein are verbatim recitations of conclusory allegations in Plaintiffs' Amended Complaint." Dkt. 98. Rule 56(e)(2) states that "when a motion for summary is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleadings; rather its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Under Fed. R. Civ. P. 56(e)(1), an affidavit supporting summary judgment must be made on personal knowledge, set forth such facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. *Shakur v. Schriro*, 514 F.3d 878, 898-890 (9th Cir. 2008). Conclusory affidavits that do not affirmatively show personal knowledge of specific facts are insufficient. *Id*. The court concurs with the defendants that these paragraphs are merely allegations that appeared in Staples' Amended Complaint and do not set out specific facts. Striking them, however is not the appropriate sanction. The court will accord these paragraphs the proper weight and defendants' motion to strike should be denied.

## VI. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986) (non-moving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

## VII. DISCUSSION

Title VII provides that it is an unlawful employment practice for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race..." 42 U.S.C. § 2000e-2(a)(1). Similarly, 42 U.S.C. § 1981 protect individuals from race discrimination in the workplace, and 42 U.S.C. § 1983 protects plaintiffs from individuals acting under the color of state law.

### A. Proper Defendants

The defendants assert that Ms. Arnold-Williams, Ms. Harvey, Ms. Lashway and Mr. Tyers cannot be individually liable, as employees, for the alleged discriminatory conduct under Title VII. Dkt.86. *See Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587–588 (9th Cir. 1993). Under Title VII, civil liability is limited to the employer. *Id.* at 587; *See also Sherez v. State of Hawai'i Dept. of Educ.*, 96 F.Supp.2d 1138, 1145 (D.Hawai'i 2005) (holding that a state employee, even a supervisor, is not individually liable as employers

under Title VII.). Therefore, under Title VII, Staples' possible relief is limited to his employer, DSHS, and he cannot hold defendants Arnold-Williams, Harvey, Lashway or Tyers liable in their individual capacities. Therefore, Staples' Title VII claims against Arnold-Williams, Harvey, Lashway and Tyers should be dismissed.

The defendants also argue that the defendant, DSHS, and the individuals in their official capacities cannot be sued under 42 U.S.C. § 1981 and 42 U.S.C. § 1983. Dkt. 70 at 8. Under these statutes, actions against the state, state agency or state officer in his or her official capacity are not permitted. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989) (holding that the state nor its officials acting in their official capacity are "persons" under § 1983)*, see Pittman v. Oregon*, 509 F.3d 1065, 1070-1074 (9th Cir. 2007) (stating that 42 U.S.C. § 1981 does not permit actions against the state or arms of the state.) Therefore, Staples' 42 U.S.C. § 1981 and 42 U.S.C. § 1983 claims against DSHS and against Arnold-Williams, Harvey, Lashway and Tyers in their official capacities should be dismissed.

However, under 42 U.S.C. § 1981 and 42 U.S.C. § 1983, Staples could have a claim against Arnold-Williams, Harvey, Lashway and Tyers in their individual capacities. *See Price v. Akaka,* 928 F.2d 824, 828 (9th Cir. 1990). In order to establish a prima facie case, Staples must present sufficient evidence that the defendant was a "person" acting under color of state law, and the defendant deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Briley v. California,* 564 F.2d 849, 853 (9th Cir. 1977); *see also Pittman v. Oregon,* 509 F.3d 1065, 1068 (9th Cir. 2007) (stating that "the prohibition on discrimination by a state or its officials contained in § 1981 can be enforced against state actors only by means of § 1983" in light of the enactment of § 1981(c) and holding that § 1981 does not create a cause of action against states.) Vague and conclusory allegations of official participation in a civil rights violations are not sufficient to support a claim under § 1983. *Ivey v. Board of Regents*, 673 F.2d 266 (9th Cir. 1982)

In Staples' response, he does not allege any personal participation by Lashway or Tyers. *See* Dkt. 97. Furthermore, Staples' only statement about Arnold-Williams' participation in the events that lead up to this suit are that "these materially adverse personnel actions being taken against Staples by Harvey were taken with the knowledge and consent and approval and/or ratification of Willaims" and that "Williams took not [*sic]* remedial steps to address the racial discrimination issues Staples raised." Dkt. 97; *see* Dkt. 97-2 ¶

ORDER
Page - 11

19. These vague and conclusory allegations are not sufficient to establish personal participation on the part of Lashway, Tyers and Arnold-Williams. Therefore, the defendants Lashway, Tyers and Arnold-Williams should be dismissed from this suit.

*B. Disparate Impact*

A disparate impact discrimination claim challenges "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Stout v. Potter,* 276 F.3d 1118, 1121 (9th Cir. 2002) (citations omitted). At the outset, the plaintiff making such a claim must make out a prima facie case and carries the burden of demonstrating that the challenged employment practices produce a significantly discriminatory selection pattern. *Eldredge v. Carpenters 46 Northern California Counties Joint Apprenticeship and Training Committee*, 833 F.2d 1334, 1338 (9th Cir. 1987). "It is not sufficient to present evidence raising an inference of discrimination...the plaintiff 'must actually prove the discriminatory impact at issue.'" *Stout*, 276 F.3d at 1122. A prima facie case is "usually accomplished by statistical evidence showing that an employment practice selects members of a protected class in a proportion smaller than their percentage in the pool of actual applicants." *Id.*

For a plaintiff to establish a prima facie case of disparate impact under Title VII, Staples must: (1) show a significant disparate impact on a protected class or group; (2) identify the specific employment practices or selection criteria at issue; and (3) show a causal relationship between the challenged practices or criteria and the disparate impact. *Hemmings v. Tidyman's Inc.,* 285 F.3d 1174, 1190 (9th Cir. 2002) *citing Atonio v. Wards Cove Packing Co., Inc.*, 810 F.2d 1477, 1482 (9th Cir. 1987). Staples has the burden of demonstrating that the challenged employment practice or practices produce a significantly discriminatory selection pattern. Staples has not provided the court with any evidence of a significantly discriminatory selection pattern or a specific policy or practice that causes a discriminatory impact against his protected class. *See* Dkt. 97. Further, Staples offers no statistical evidence as support for his disparate impact claim. *See* Dkt. 97. Therefore, the defendants' motion for summary judgment on the issue of Staples' disparate impact claim should be granted.

*C. Disparate Treatment*

Disparate treatment discrimination is "the most easily understood type of discrimination...[t]he employer simply treats some people less favorably than others" because of one or more of their protected characteristics. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609, 113 S.Ct. 1701, 1705 (1993), *citing Teamsters v. United States*, 431 U.S. 324, 335-36 n.15, 97 S.Ct. 1843, 1855 n.15 (1977). "Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment...". *Id.*

The three-stage burden-shifting test set forth in *McDonnell Douglass Corp. v. Green*, 411 U.S. 792, 802-804 (1973), applies to both federal and state claims for disparate treatment discrimination under Title VII . *See Coghlan v. American Seafoods Co.*, LLC., 413 F.3d 1090, 1093-94 (9th Cir. 2005). Under the *McDonnell Douglass* test, the plaintiff must first establish a prima facie case of race discrimination consisting of the following elements: (1) the plaintiff belongs to a protected class; (2) he was performing the job satisfactorily; (3) he suffered an adverse employment action; and (4) other employees with qualifications similar to his own were treated more favorably. *McDonnell Douglass Corp.*, 411 U.S. at 802. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its adverse employment decisions. *Id.* Once the defendant satisfies this burden, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for a discriminatory motive. *Id.* at 804. A plaintiff may establish pretext either directly, by showing that unlawful discrimination more likely motivated the employer, or indirectly, by showing that the employer's proffered reason is unworthy of belief. *See Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 (9th Cir. 1996).

In this case, the defendants assert that Staples failed to establish a prima facie case of discrimination. Dkt. 98. First, Staples belongs to a protected class as an African-American. Although Staples failed to state in his declaration that he is African-American, the defendants state in their motion for summary judgment that he is African-American. *See* Dkt. 86 at 2. Therefore, the first element of a prima facie case of disparate treatment is established..

Second, the defendants argue that Staples was not performing his job satisfactorily. Defendants provide extensive documentation that Staples was underperforming in his job duties and was eventually

decertified as a Functional Family Therapist. *See* Dkt 88-2. DSHS carefully cataloged Staples' poor performance at his job. *Id*. To rebut this documentation, Staples merely presented conclusory statements that he "has satisfactory [sic] performed his job duties" and that he "is fully qualified for his position." *See* Dkt 97-2. Although all facts and inferences are viewed in the light most favorable to the non-moving party, no reasonable trier of fact could determine that Staples was performing his job satisfactorily in light of the thorough documentation provided by defendants and Staples terse conclusory statements. *See* Dkt. 88-2; *see also* Dkt. 97-2. Furthermore, Staples offers no counterpoint to the defendants' documentation other than his conclusory statements. *See* Dkt. 97-2. Finally, an employee's subjective personal judgment of his or her competence alone does not raise a genuine issue of material fact. *See Bradley v. Harcourt, Brace & Co.,* 104 F.3d 262, 270 (9th Cir. 1996). Staples does not make out a prima facie case of disparate treatment.

Furthermore, Staples failed to provide evidence that a letter of reprimand is an adverse employment action. First, an adverse employment action is one that materially affects the compensation, terms, conditions, or privileges of employment. *See Davis v. Team Elec. Co.,* 520 F.3d 1080, 1089 (9th Cir. 2008). Staples offered no evidence that this letter materially affected his compensation, terms, conditions or privileges of employment. *See* Dkt. 97-2. All Staples offers is the conclusory statement these were "materially adverse personnel actions" without any supporting evidence how this letter of reprimand harmed Staples. Dkt. 97-2. Furthermore, the defendants assert that the letter of reprimand did not impact Staples' job title, office location, salary or benefits and that only some modification was made to his job description because of the FFT decertification. Dkt. 88-2 at 3. Staples, on the other hand, offered no evidence to counter the defendants' statement. Dkt. 97-2.

A prima facie case also requires that the plaintiff provide some evidence that other employees with qualifications similar to his own were treated more favorably. For this element, Staples offers vague and conclusory statements that he "was performing his job as he had been so doing for the past 30 years, which was as well as or better than similarly-situated non-complaining and/or white coworkers" and that "these similarly-situated non-complaining and/or white co-workers were not disciplined for the same level or a lower level of job performance." Dkt. 97-2. However, Staples' verbatim recitation of an element of a prima facie case is not sufficient. The court should grant the defendants motion for summary judgment on the disparate treatment claim because Staples failed to provide any factual evidence other than the vague

allegation quoted above. Dkt. 97-2. The burden for a plaintiff to survive a motion for summary judgment on a disparate treatment claim is not overwhelming, but a plaintiff must offer some evidence other than a conclusory statement of the law.

Furthermore, even if Staples had made a prima facie case of disparate treatment, Staples offered no evidence that the defendants' legitimate non-discriminatory reason was pretextual. The plaintiff can show pretext either "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Further, the Ninth Circuit has stated that the plaintiff must offer "specific" and "substantial" evidence of pretext to overcome a defendant's motion for summary judgment. *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2004). In *Stegall,* the Ninth Circuit reversed a district court's grant of a defendant's summary judgment motion because the plaintiff had offered a myriad of circumstantial evidence to rebut the defendant's proffered legitimate non-discriminatory reason. *Id.* at 1068. Here on the other hand, Staples failed to offer specific and substantial evidence that DSHS's offered legitimate non-discriminatory reason was pretext for racial discrimination. Vague and conclusory statements are not sufficient to rebut the defendants' legitimate non-discriminatory reason that Staples was underperforming and had been so for some time. Therefore, the court should dismiss Staples' disparate treatment claims against the defendants because he failed to make out a prima facie case and, even if he had, he did not provide evidence that the defendants legitimate non-discriminatory reason was pretext.

*D. Retaliation*

To establish a retaliation claim under Title VII, "a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir. 2000) (*citing Payne v. Norwest Corp.*, 113 F.3d 1079 (9th Cir.1997)). At that point, "the burden of production shifts to the employer to present legitimate reasons for the adverse employment action. Once the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext. Only then does the case proceed beyond the summary judgment stage." *Id.*

The defendants argue that Staples cannot establish a prima facie case of retaliation. Dkt. 98.

However, Staples asserts that he was involved in a protected activity. Namely, Staples stated in his declaration that he complained at a meeting in August 2006 at which Harvey was present that he "believed that he was a victim of employment discrimination because of his race." Dkt. 97-2. In addition, Staples stated in his declaration that he raised the issue of discrimination in the workplace to Harvey in September 2006 at another meeting. Dkt. 97-2. Staples asserts that Harvey took no remedial action after this meeting. Dkt. 97-2. Finally in October 2006, Staples stated that he "sent a memo to Harvey complaining about disparate treatment and requesting her assistance," but "Harvey took no remedial steps." Dkt. 97-2. These complaints to a supervisor about racial discrimination are a protected activity.

Next, Staples argues that he was subjected an adverse employment action; specifically, Staples was issued a letter of reprimand on May 1, 2007. As addressed under the discussion of disparate treatment, Staples offered no specific evidence of how this letter of reprimand was adverse to his employment. Dkt. 97-2. *See also Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) ("[O]nly non-trivial employment actions that would deter reasonable employees from complaining about Title VII violations will constitute actionable retaliation.")

Also, Staples failed to present any evidence how the protected activity, the complaints about *discrimination, was connected to the letter of reprimand. See Dkt. 97-2. To establish causation, Staples* must present some evidence that his complaints were connected to the letter of reprimand. Although Staples may believe that his letter of reprimand was issued because of his earlier complaints about racial discrimination, Staples offered no evidence to connect the two events except vague and conclusory allegations in his declaration that he engaged in the protected activity and suffered an adverse employment action. Dkt. 97-2. Where an adverse employment action follows on the heels of protected activity, timing alone will not show causation in all retaliation cases under Title VII. *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054,1065 (9th Cir. 2004). Because Staples offered no evidence to persuade the court that a reasonable trier of fact could find that the complaints were the reason for the letter of reprimand; the court should grant the defendants' motion for summary judgment.

Even if Staples had made a prima facie case of retaliation, the defendants offered a legitimate non-retaliatory reason for the alleged adverse employment action. First, the defendants offer substantial documentation that Staples was not meeting his performance goals and had been underperforming. Dkt. 88-

2. Second, the defendants assert that Staples lost his credentials as a Functional Family Therapist because of his under performance. Dkt. 88-2. Third, a separate investigatory review by the JRA was initiated Harvey into Staples' under performance a month before Staples' allegedly made his first complaint at a meeting at which Harvey was present. Dkt. 88-2 at 8; Dkt. 97-2. Finally, the separate JRA investigation found that Staples "consistently failed to meet Washington State FFT Therapist adherence and competency requirements," and "failed to consistently meet JRA FFT Therapists Expectations and the Essential Functions of the JRA FFT Coordinator position." Dkt. 88-2 at Exhibit K. The defendants have offered a legitimate non-retaliatory reason for Staples' letter of reprimand.

As in disparate treatment cases, once a defendant offers a legitimate non-retaliatory reason, the burden is on a plaintiff to show that this reason is pretext. Here, Staples only states that he "satisfactorily performed his job duties" and that the letter of reprimand was "without cause or justification." Dkt. 97-2. A plaintiff's vague subjective conclusory statements are not sufficient to rebut the defendants' proffered legitimate non-retaliatory reason. *See Bradley v. Harcourt, Brace & Co.,* 104 F.3d 267, 270 (9th Cir. 1996) (explaining that "an employee's subjective personal judgments of [his] competence alone do not raise a genuine issue of material fact."). Therefore, the court should grant the defendants' motion for summary judgment on the issue of retaliation.

*E. Staples' Claims Under 42 U.S.C. § 1981 and 42 U.S.C. § 1983*

Similar to Title VII, 42 U.S.C. § 1981 and 42 U.S.C. § 1983 prohibit employers from discriminating and retaliating against employees because of their race or complaints about racial discrimination in the workplace. *CBOC v. Humphries*, 128 S. Ct. 1951 (2008). When the court examines a complaint of discrimination or retaliation under 42 U.S.C. § 1981 or 42 U.S.C. § 1983, the court uses the same standards as Title VII including the *McDonnell Douglas* burden-shifting framework. *Surrell v. Ca. Water Serv. Co.,* 518 F.3d 1097 (9th Cir. 2009); *see also Federal Deposit Ins. Corp. v. Henderson,* 940 F.2d 465, 473 fn. 14 (9th Cir. 1991). Because Staples failed to produce sufficient evidence to support a claim under Title VII for disparate treatment and retaliation, Staples' claims under 42 U.S.C. § 1981 or 42 U.S.C. § 1983 must fail. *Peters v. Lieuallen,* 746 F.2d 1390, 1393 (9th Cir. 1984). Therefore, the court should grant the defendants' motion for summary judgment on Staples' claims under 42 U.S.C. § 1981 and 42 U.S.C. § 1983.

Therefore, it is hereby

1     **ORDERED** that DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DISMISSING
2 PLAINTIFF JAMES STAPLES' CLAIMS (Dkt. 86) is **GRANTED.** The plaintiff Staples' claims against
3 the defendants are **DISMISSED WITH PREJUDICE.**
4     The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any
5 party appearing *pro se* at said party's last known address.
6     DATED this 17th day of February, 2009.

                                          */s/ Robert J. Bryan*
                                      ROBERT J. BRYAN
                                      United States District Judge